(No. 27986.— ▮▮▮▮▮▮▮▮▮▮)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM HAROLD JAMESON, Plaintiff in Error.

*Opinion filed September 19, 1944.*

Fletcher Lewis, of Murphysboro, for plaintiff in error.

George F. Barrett, Attorney General, and Glenn O. Brown, State's Attorney, of Carbondale, (Orwin H. Pugh, of Carbondale, of counsel,) for the People.

Mr. Chief Justice Fulton delivered the opinion of the court:

This writ of error is brought to review the judgment of conviction and sentence to death entered against the plaintiff in error by the circuit court of Jackson county upon a plea of guilty to the crime of murder as charged in the indictment.

On January 10, 1944, the regular grand jury for the January term of the circuit court of Jackson county convened, was impaneled and made its report to the court. Four days after the report of the regular grand jury, Harry Bidwell, a DuQuoin taxi driver was shot and killed by the plaintiff in error. Plaintiff in error was arrested, and on January 21 an order was entered by the presiding

judge of the circuit court that "the Public Interests require the ordering of a special Grand Jury for action on certain alleged criminal offenses coming up since the regular Grand Jury has completed its work and been discharged * * *." Thereupon a special grand jury was impaneled on January 22, and an indictment returned against the plaintiff in error charging him with murder. On the morning of the same day, after the return of the indictment, the plaintiff in error was arraigned in open court and, as appears from the docket sheet and common-law record, was furnished with a copy of the indictment, a list of the People's witnesses and the jurors at the then term of court. From these records it appears that the court then asked the plaintiff in error if he had an attorney or wanted one, to which the plaintiff in error replied that he did not, and for his plea said he was guilty of the charge laid in the indictment; that thereupon the court explained the plaintiff in error's rights to a trial by jury and to be represented by counsel, whereupon Judge W. F. Ellis, an attorney, was appointed to advise with and represent the plaintiff in error and to aid the court in presenting any and all evidence in mitigation and to advise the court fully of the facts of the crime so as to fix a just and proper punishment; that plaintiff in error was thereupon admonished of the consequences of his plea and the penalties thereupon were explained, but plaintiff in error persisted in his plea; that the cause was then continued for hearing and investigation of the facts and circumstances of the crime, and for fixing the penalty, to January 29, 1944, at which time same was continued to February 5, 1944; that on February 4, 1944, through attorney Fletcher Lewis, the plaintiff in error filed a motion to withdraw the plea of guilty; that on February 14, a hearing on the motion was had wherein attorney Lewis appeared for the plaintiff in error, and the motion was denied by the court. Thereupon another motion to expunge from the records the docket entries that

the plaintiff in error had been furnished with a copy of the indictment and a list of the People's witnesses was filed and denied by the court after argument. The hearing then proceeded on mitigation.

The motion of the plaintiff in error to withdraw his plea of guilty to the indictment set forth that the plaintiff in error was not guilty of the murder but had a good defense worthy of consideration by a jury; that the ends of justice would be best served by his case being submitted to a jury; that after consulting with his attorney there is a reasonable doubt of his guilt; that the plea of guilty was entered through a misapprehension of the law; that the plaintiff in error was of the age of twenty-two years, unfamiliar with court procedure, went only as far as the fourth grade in the Kentucky country school and was among strangers; that at the time of the plea he knew nothing about the law of self-defense and did not know that if he believed, as a reasonable person, at the time of the killing in question that he was about to lose his life or suffer great bodily harm at the hands of another and that if, acting under such belief, he fired the shots which killed the deceased, such killing would be justifiable self-defense; that this was first pointed out to him by Judge Ellis who visited the defendant in the county jail after the plea of guilty had been entered; that he was told by Judge Ellis at said time that Judge Ellis had been appointed by the court as a representative of the court and not to represent the defendant; that defendant had no opportunity and did not consult with any attorney until after his plea of guilty had been entered and he had been returned to the county jail; that if the law had been explained to him he would not have entered a plea of guilty; that the only other attorney he consulted with was attorney Lewis, whom he first saw on the day of the filing of the motion to withdraw his plea of guilty and who was employed by his father and sister; that when Judge Ellis

first talked to him he asked him why he had pleaded guilty and that he answered that he had, in fact, killed the deceased and that he thought he was pleading guilty to such killing and did not understand any of his rights as to defenses; that at no time was he ever furnished with a copy of the indictment nor with a list of the witnesses. The motion and affidavit then continued with a statement of the facts setting forth the claim on the part of the plaintiff in error that the killing was committed in self-defense, and concluded with an affidavit.

In support of the motion and affidavit Judge Ellis testified that the court had called him before the plea of guilty was entered and had indicated to him that if accused did not have counsel, the court would appoint him; that he was appointed by the court to look into the question of the defendant's guilt and that he was appointed at the time of the arraignment; that about an hour and a half after the appointment he went to see the defendant for the first time, whereupon he asked the defendant why he had entered a plea of guilty, to which the defendant replied that he had killed the man and was guilty thereof but did not know he had a right to kill him; that he explained to the plaintiff in error that he was not representing him but was appointed by the court to inquire to see if there were any mitigating or extenuating circumstances.

On February 14 and 15, a hearing was held on mitigation, and the defendant was sentenced to suffer the extreme penalty of death in the electric chair, March 15, 1944, being fixed as the date for execution. On February 25, after a motion in arrest of judgment had been filed, the date of execution was changed to March 23, 1944, same being ten days after the first day of the next Supreme Court term as provided by law. Orders were thereupon entered on application of the plaintiff in error suspending the warrant and allowing prosecution of the writ of error as a poor person to this court.

It is conceded that the sentence of death is erroneous for the reason that the date set for execution was less than fifty days from the time judgment was pronounced. This would only necessitate, however, the reversal and remandment of the case for proper sentence. *People* v. *Montana*, 380 Ill. 596.

In the view we take of this case, it will only be necessary to review two of the errors assigned. First, it is contended by the plaintiff in error that the order of the circuit court calling a special grand jury was void. Section 19 of the Jurors Act (Ill. Rev. Stat. 1943, chap. 78, par. 19,) provides: "The judge of any court of record of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of the opinion that public justice requires it."

It is urged in this court for the first time that the order calling the special grand jury was a void order since it recited that "public interests" required the calling of the special grand jury and not "public justice" as provided by the statute. The question arises, therefore, as to whether or not the call of the grand jury by the circuit court as required by "public interests" is sufficient to create a legally constituted grand jury.

The rule in regard to objections to the organization of a grand jury was announced in *People* v. *Gray*, 261 Ill. 140, where it was held that irregularities in constitution of the grand jury are waived by pleading to the indictment and that this doctrine applies to all informalities in the drawing or summoning of the jury and questions regarding its qualifications, but that it did not extend to cases where because of a fundamental defect the grand jury was without jurisdiction to act. In that case the record did not show that any of the persons summoned appeared in court, that a grand jury was impaneled, that a foreman was appointed or sworn or that a grand jury or any grand juror was sworn. It was held in that case that without being sworn

the grand jury was without jurisdiction to take any action and, therefore, the indictment found by the said grand jury was deemed void and of no effect.

In *People v. Brautigan,* 310 Ill. 472, it was held that at common law the existence of the grand jury ceased with the term of court and that the court was not authorized to continue the grand jury beyond the adjournment of the term and further that the question of the want of jurisdiction cannot be waived but may be asserted at any time.

We appreciate the fact that the order calling a special grand jury must be such as to give the grand jury jurisdiction, but we do not feel that the variation in the language of the court order stating that "public interests" require the calling of a special grand jury is such a fundamental defect that the grand jury summoned and organized in obedience to that order was without jurisdiction to act.

In *People v. McCauley,* 256 Ill. 504, it was held that an irregularity in the constitution of the grand jury is waived unless the defendant raises the question by challenge to the array or by a motion to quash the indictment on the ground that it was not found by a legally constituted grand jury. It was further stated in that case that where a grand jury which had been previously discharged is reassembled by the court during the term, it is in any view at least a grand jury *de facto* and its acts cannot be set aside upon writ of error in the absence of a motion to quash the indictment or challenge to the array in the trial court.

In *People v. Lieber,* 357 Ill. 423, the opinion quotes from 12 Ruling Case Law, 1016, as follows: "When the provisions of the statute are merely directory, particularly when the chief purpose of the prescribed method is to distribute equally the burden of jury service, a departure from that method does not, in the absence of fraud or prejudice to the interests of the party who questions the regularity

of the selection, render the grand jury illegal. The reason of this rule is that the grand jurors do not try the case but merely charge the accused. The manner of their selection is of no consequence to him, he being entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections. Such statutes need not be followed with technical or literal strictness. A substantial compliance is all that is· required and mere irregularities in the drawing and selection do not invalidate the grand jury's action."

We do not consider here that the irregularity shown by the record can be regarded as of such extreme importance that it was in any way prejudicial to the accused. It is further stated in the *Lieber case* that a substantial compliance with the law providing for the drawing and impaneling of a grand jury is all that is required unless the record shows improper influence, undue prejudice or other matters which might have caused a true bill to be improperly returned. It is our judgment that the points raised by the writ of error in this case are not matters affecting the real merits of the case as charged in the indictment and that no substantial injustice will result to the plaintiff in error because of the error or irregularity charged.

Second, it is claimed by the plaintiff in error that the trial court erred in denying the motion of the plaintiff in error for permission to withdraw his plea of guilty and to enter a plea of not guilty, and in failing to provide counsel for the plaintiff in error prior to his arraignment or prior to the entry of his plea of guilty.

The rule has often been announced in this State that permission to change a plea of guilty to one of not guilty is a matter within the discretion of the trial court and this discretion will not ordinarily be disturbed unless it appears

that the plea of guilty was entered on a misapprehension of the facts or of law, or in consequence of misrepresentation by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by the jury and the ends of justice will be better served by submitting the case to a jury. (*People* v. *Adams,* 379 Ill. 323.) However, if the record of the proceeding falls within any of the exceptions above mentioned, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty. *People* v. *Denning,* 372 Ill. 549; *People* v. *Throop,* 359 Ill. 354.

The discretion of the trial court to permit the withdrawal of the plea of guilty is a judicial discretion which should always be exercised in favor of innocence and liberty. The law favors a trial upon the merits by jury, and all courts should so administer the law and construe the rules of practice as to secure a hearing upon the merits, if possible. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of the plea from guilty to not guilty. The withdrawal of the plea of guilty should not be denied in any case where it is evident that the ends of justice will be served by permitting the plea of not guilty in its stead. *People* v. *Schraeberg,* 340 Ill. 620; *People* v. *Kurant,* 331 Ill. 470.

It is apparent from the affidavit filed by the plaintiff in error, after he had talked with Judge Ellis who had been appointed to defend him, that he had an understanding of his rights which differed essentially from his conception of them at and prior to the time he pleaded guilty. The accused was a young man twenty-two years of age who had a small amount of education and who, as was shown by his testimony and that of the officers on the hearing in mitigation of sentence, repeatedly stated that he was

guilty of killing the man whom he did kill and that in pleading guilty he understood that he was merely saying that he had killed the deceased. The motion to withdraw his plea and to substitute one that he was not guilty indicates that if he had received the advice of counsel in apt time a defense to the charge in the indictment would have been interposed and that he did not understand that in so pleading he was pleading guilty to a charge of murder with malice aforethought. Whether his defense before a jury would have availed him is immaterial for the present purpose. The law provides one mode of trial, and it is the same for the innocent as for the guilty. (*People* v. *Sweetin,* 325 Ill. 245.) The fact that on a trial the plaintiff in error may be found guilty is not of itself a sufficient reason to deny him the right, upon a proper showing, to withdraw his plea of guilty and to enter a plea of not guilty, (*People* v. *Carzoli,* 340 Ill. 587; *People* v. *Moore,* 342 Ill. 316,) nor to deny him a full opportunity to present, through counsel, such defense as he may have to the charge. (*People* v. *Kurant,* 331 Ill. 470.) In addition, it cannot be assumed that a verdict of guilty will necessarily result in fixing the punishment at death. In this kind of case, if guilty, the degree of punishment is a matter which the accused has a right to have determined in the manner provided by law, and the verdict may result in alternative forms of guilty, not guilty, manslaughter, death, life sentence or any number of years.

It is conclusively shown that at the time of the entry of the plea of guilty plaintiff in error had not had the advice of any counsel whatsoever. While the statute does not specify the particular stage of the proceedings when counsel shall be appointed, it is obvious that it should be done before a plea of guilty or a jury waiver is accepted, or the cause called for trial, and especially before anything is done that might prejudice the defendant in his defense. *People* v. *Terry,* 366 Ill. 520.

Judge Ellis first conferred with the accused an hour and a half after his appointment and at that time did not understand he was to represent the defendant but that his appointment was to advise with the court relative to matters of mitigation and aggravation. Not only did he so testify in support of the accused's motion to be allowed to withdraw the plea of guilty, but likewise informed the mother of the accused, when she called on him to hire him to represent her son, that he was appointed by the court to represent the court and could not represent her son. The first time, therefore, that any counsel appeared in the actual defense of the accused was when attorney Lewis presented his motion to withdraw the plea of guilty and enter a plea of not guilty. All of the proceedings which followed immediately after the appointment by the court of Judge Ellis tend to show that the plaintiff in error entered his plea unadvisedly under a misapprehension of the law as it affected his rights and defense and that he did not fully appreciate the consequences of his plea at the time it was entered.

Although the recitals in the record indicate that the plaintiff in error was duly informed and admonished of the effect of his plea of guilty, where it appears that the plaintiff in error has pleaded guilty under a well-founded misapprehension of the law or where the ends of justice will be best served by permitting a plea of guilty to be changed to a plea of not guilty, the court, in the exercise of discretion, should grant the request. *People* v. *Kurant,* 331 Ill. 470; *Krolage* v. *People,* 224 Ill. 456.

Plaintiff in error's own statement that he did not fully understand the effect of his plea nor the law as to his rights and defenses to the charge against him should have moved the court to set aside the plea and allow him to submit his case to a jury.

The gravity of the charge, with the resultant possibility of loss of life to the accused, demands that, in the interest

of innocence, liberty and justice, every precaution be taken to insure to the accused the fullest opportunity, advisedly, to present the merits of his defense. The motion to withdraw the plea of guilty, having been filed immediately after consultations with counsel, should have been allowed.

For the reasons stated, the judgment of the circuit court of Jackson county is reversed and the cause remanded, with directions that the defendant in error be permitted to withdraw his plea of guilty and be given the opportunity of presenting his case in a trial by jury.

*Reversed and remanded, with directions.*